## MORTON and others *vs.* WEIL and others.

Where several judgment creditors, claiming under different judgments against the same debtor, join in a suit to set aside various liens, by judgments and by assignment, on the debtor's property, for fraud, and to have the property applied to the payment of the plaintiffs' debts, they may unite as defendants, with the judgment debtor, all persons having liens or conveyances by which they claim different portions of the debtor's property, notwithstanding such persons received the property in separate and distinct parcels, and at different times, and each claims to hold the portion in his hands by virtue of a separate lien or conveyance.

In such a case the cause of action is the fraud of the debtor in disposing of his property; and there is but one cause of action, although the defendants hold the property of the debtor in separate parcels, in which there is no joint interest. They all hold by the same title, and are all affected by the same taint.

DEMURRER to complaint. The action was brought by several mercantile firms, doing business in the city of New York, against the executors of Moses Bettman, deceased, and others, to subject the property of the said Bettman to

the payment of the several demands of the plaintiffs. The complaint alleged various sales of goods by the several firms to Bettman, at different times, on various terms of credit; that before said terms of credit had expired, actions were brought by the plaintiffs, against Bettman, to recover the amount of the said several debts, on the ground of fraud on his part in contracting the same. The complaint stated the amount of each of the said judgments, and the date of its being docketed; that in some of said suits the defendant was arrested and held to bail, and an injunction order was issued and served upon him, restraining him from making any transfer or other disposition of his property, and from any interference therewith; that at that time Bettman had property in his possession and under his control, as owner, of the value of at least $100,000; of all which facts the defendants in this action had due notice, at or about that time; that while said injunction orders were in full force, the defendants, having severally as individuals and executors, and copartners, claims of various kinds and amounts, against Bettman, which claims were in part without consideration and invalid, and all of which were not due and payable, and were not valid and subsisting claims, severally conspiring with each other and with Bettman, and falsely and fraudulently contriving to defraud the plaintiffs out of their just claims against Bettman and his property, and of their lien and priority of claim upon such property, arranged and agreed with Bettman to accelerate the time of payment of their several claims and demands against him, so as to make the same appear presently due and payable, and received from him notes therefor, payable at once, upon which judgments were recovered, by the covenants and stipulations of Bettman, the amounts and dates of which judgments were specified; that upon such judgments executions were immediately issued, under which the sheriff levied upon the whole stock of merchandise of the said Bettman; that prior to any sale under said executions the plaintiffs caused a notice of their rights and claims in re-

gard to said property to be served upon the sheriff and some
of the defendants, and informing them that they would be
held responsible for any interference with the said property
of Bettman, contrary to the injunction orders and to the
rights and claims of the plaintiffs ; that in some of the actions
commenced by the plaintiffs against Bettman and others, at-
tachments were issued, and levied upon his property ; that
the executions in favor of all the defendants herein who took
judgment against Bettman by his stipulation and confession,
as above stated, were all paid to the said defendants, in full,
with interest, on the 3d of September, 1857, by the
sheriff, out of moneys realized from the sale of Bettman's
property, and in violation and fraud of the plaintiffs' rights.
The complaint further alleged that on the 30th of April,
1857, Bettman, in violation of the injunction orders and of
the plaintiffs' rights, made a general assignment of his prop-
erty to the defendants Bernheimer and Weil as assignees for
the benefit of his creditors, in which he gave a preference in
payment to the several judgments so confessed by him as
above mentioned, and making other fraudulent preferences as
against the claims of the plaintiffs, and providing for the
payment of certain fictitious claims and demands, prior to
the payment of the plaintiffs' claims ; and that he fraudu-
lently withheld a large amount of property from the effect of
said assignment, with the consent and in favor of the as-
signees. And the plaintiffs charged that said assignment was
fraudulent and void as to all of the plaintiffs' claims and
demands, and with the intent to hinder, delay and defeat
the claims of creditors. That on the 27th of March, 1857,
the defendants A. & S. Gump received from Bettman, for
the purpose of concealing the same from his creditors, a large
amount of dry goods, of the value of some $9000, under a
pretense of sale, for which no consideration was paid, and
that they had either sold the same and paid over the proceeds
to Bettman, or still held the same as his property ; that exe-
cutions issued upon the plaintiffs' judgments had been re-

turned wholly unsatisfied; that Bettman died April 24, 1858, intestate, and letters of administration had been issued to the defendant Henrietta Bettman. The complaint also alleged that the defendants D. & S. Hausmann aided Gump and Bettman, in the secretion of the said dry goods, and had received a large amount of accounts, bills receivable, notes, &c. from Bettman, without paying any consideration therefor, for the purpose of placing the same beyond the reach of, and defrauding, the creditors of Bettman, and with knowledge of his insolvent condition. The plaintiffs prayed for judgment that the several judgments in favor of the defendants, against Bettman, and the executions issued thereon, might be declared fraudulent and void as against the claims of the plaintiffs in this suit, as to all property of Bettman held by him at the time of the service of said injunction orders; that the defendants who were paid the amounts of their judgments by the sheriff, on their executions, might be required to account for and pay over the several amounts so received, with interest; that the assignment might be declared fraudulent and void, and that the assignees might be required to render an account, under oath, of the property and assets received by them under the assignment, and to transfer them to the receiver; that the defendants Gump might be required to account for and pay over to the receiver for the merchandise so fraudulently received and concealed by them; and that the defendants Hausmann might also be required to account and pay over and transfer to the receiver all of the property so fraudulently received by them; that a receiver might be appointed; and that out of the proceeds of said property and effects the plaintiffs might be paid the amount of their several judgments, interest and costs; and for general relief.

To this complaint the defendants Max Weil and Emanuel Bernheimer, as assignees of Bettman, demurred, and assigned the following causes of demurrer: 1. That there was a defect of parties plaintiff; 2. That there was a defect of parties

defendant; 3. That several causes of action were improperly united; 4. That the complaint did not state facts sufficient to constitute a cause of action; 5. That the complaint did not state facts of and concerning the defendants, as assignees, sufficient to constitute a cause of action against them.

Similar demurrers were put in by other defendants.

*Barney, Butler & Parsons*, for the plaintiffs.

*Benedict & Boardman*, for the defendants.

INGRAHAM, J.   Upon all the grounds stated in the demurrer in this case, except the 3d, I am of the opinion that the demurrer is not well taken.   The 3d cause of demurrer is that several causes of action have been improperly joined.

The object of the complaint appears to be to set aside various liens by judgment and by assignment on the debtor's property, for alleged fraudulent acts on the part of the defendants, and to have the property covered by such liens, or received in payment of the claims of those creditors who were made defendants, and the proceeds of such property, applied to the payment of the several judgments held by the various persons named as plaintiffs.   So far as these claims, whether by conveyance, judgment or delivery, affect the same property, they are properly united together.   But the point raised in this case is, whether different persons, having different liens or conveyances by which they claim different pieces of land, or different parcels of personal property, may all be included in one action, and required to contest their respective titles to separate portions of the debtor's property.

By the code, it is provided that the causes of action to be united, must affect all the parties to the action.   (§ 167.) In the present case, part of the object of the complaint is to have the judgments recovered by several different judgment creditors declared void.   Another portion of the complaint charges that Bettman, the debtor, made an assignment for the benefit of certain creditors, and charges fraud in regard

Morton *v.* Weil.

thereto, and claims to have that assignment declared void. Another portion of the complaint avers, that Hausmann and Gump, with Bettman, were concerned in secreting the goods and property of Bettman for the purpose of concealing the same from the creditors, for the benefit of Beltman. All these acts are declared to be fraudulent, but between the three classes above referred to, I can find in the complaint nothing that unites them together, or that shows them to be jointly interested even in any remote degree, except as to the general fraudulent intent in the debtor's disposition of the property. It was said on the argument, that these defendants were charged with conspiring together, and that the conspiracy was the cause of action which allowed the defendants to be all united together. On reference to the complaint, however, it will be seen that no joint conspiracy of all the defendants is anywhere alleged, but that the conspiracy of a portion only is averred, and that the other defendants had notice of the facts set up in the complaint as to the plaintiffs' rights.

The only question then is, whether, where the plaintiffs, who are judgment creditors, seek to obtain the debtor's property from persons to whom it was fraudulently passed away, they may unite such persons in one action, although they received the property in separate and distinct parcels.

That such an action could have been sustained before the code, I have no doubt. In *Brinkerhoff* v. *Brower*, (6 *John. Ch.* 139,) it was held that judgment creditors of a corporation might proceed against the trustees and others to recover the property of the corporation which had been withdrawn from the reach of their executions by the fraudulent acts of the defendants, although having different interests in the property. In *Fellows* v. *Fellows*, (4 *Cowen*, 682,) the chancellor says : " The separation of the property into portions is a part of the fraud, and to allow that such a separation shall render separate suits necessary, would be to allow success to the fraud itself, so far as a multiplicity of suits

may impede the recovery of a just demand." Justice Wood-
worth states the rule to be that "unconnected parties may
be joined in a suit, where there is one connected interest
among them all centering in the point in issue in the cause."
And again he says : "The claim against all of the defend-
ants is of the same nature. The fraud alleged is the same.
The transfer being fraudulent, the property was not changed
by being put into the hands of the defendants. They are
therefore all necessarily concerned in the thing to be recov-
ered, although they set up distinct interests to separate
parcels."

Ch. J. Savage, in the same case says : "The common
point of litigation is the fraudulent transfer of the property
of the debtor to the other defendants. If the source of their
title be corrupt, the property is taken with the taint of cor-
ruption. This is the common point of litigation, the decis-
ion of which affects the whole, and will settle the rights of
all." And in *Boyd* v. *Hoyt,* (5 *Paige,* 65,) the Chancellor
says : "Where the object of a suit is single, but different
persons have or claim separate interests in distinct or inde-
pendent questions all connected with and arising out of the
single object of the suit, the complainant may bring such dif-
ferent persons before the court as defendants. And if the
object of the present bill was to reach the property of the
debtor in the hands of these several defendants which ought
to be applied in satisfaction of the amount due on the judg-
ment, and to have it thus applied, I should find no difficulty
in sustaining the decision overruling these demurrers."

From these cases, which are very similar in their objects
to the present action, it is apparent that such actions might
have been maintained, before the code.

It also is manifest that the courts throughout, in these
cases, have based their decisions upon the supposition that
the cause of action was the fraud of the debtor in disposing
of his property, and that there was but one cause of action,
although the defendants held the property of the debtor in

separate parcels in which there was no joint interest. They all hold by the same title, and were all affected by the same taint, and this is the cause of action on which the right of the plaintiffs rests. Applying this rule to the provisions of the code, there is no room for any other decision. The cause of action is the same, viz : the fraudulent disposition of the debtor's property to the several defendants, although in several parcels. The same reasons that existed before the code, for uniting them in one action, still remains, and as the words of the section of the code above referred to do not prevent it, I think the rule still continues, and that the demurrer is not well taken.

The plaintiffs are therefore entitled to judgment upon the demurrers, with leave to the defendants to answer, on payment of costs.

[NEW YORK SPECIAL TERM, MARCH 5, 1860. *Ingraham,* Justice.]